**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

**No. 22-2298**
_____

**LAKEITHA BOSTON**
**Plaintiff-Appellant,**

**v.**

**TRIALCARD INCORPORATED,**
**Defendant-Appellee.**

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI, WESTERN DIVISION
HONORABLE BETH PHILLIPS, DISTRICT JUDGE

**REPLY BRIEF FOR APPELLANT LAKEITHA BOSTON**

  **/s/Gerald Gray II**
Gerald Gray II, #67476
**G. Gray Law, LLC**
104 West 9th Street, Suite 401
Kansas City, MO 64105
(o) 816-888-3145
(f) 816-817-4683
ggraylaw@outlook.com
**ATTORNEY FOR**
**PLAINTIFF-APPELLANT**

1

# TABLE OF CONTENTS

**TABLE OF CONTENTS**……………………………………....…....2

**TABLE OF AUTHORITIES**……………………………..…..2-3

**ARGUMENTS**…………………………………………………....4-20

**CONCLUSION**……………………………………………….…20

**CERTIFICATE OF COMPLIANCE**…………………………......21

**CERTIFICATE OF SERVICE**……………………………....…22

## TABLE OF AUTHORITIES

**Page**

## CASES

Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–159 (1986)……………….....21

*Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987)……………………7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)………………………20

Brown v. Dolgencorp, LLC, 2020 U.S. Dist. Lexis 132968 (Case No. 4:18-cv-000719-jch)……………………………………………………………..22

*Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010)…………7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)…………………………………………………………7

*Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir.2016)………..………7

*EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 972 (8th Cir.2014)………..……...8

2

*Gibson v. Concrete Equip. Co.*, 960 F.3d 1057, 1062 (8th Cir. 2020)……………..8

*Kneibert v. Thomson Newspapers*, 129 F.3d 444, (8th Cir.1997)………………...18

*Kobrin v. University of Minnesota*, 34 F.3d 698, 703 (8th Cir.1994)……………19

*Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir.2005)…...........…..9

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-805 (U.S.1973)…………8

*Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)……………………………………………………………………………7

*Sherman v. Runyon*, 235 F.3d 406, 410 (8th Cir.2000)…………………….....10, 18

*Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir.2002)……..…….…..18

*Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007)……………………………7

*Throneberry* [*v. McGehee Desha County Hosp.*], 403 F.3d [972,] 979 [(8th Cir.2005)………………………………………………………………………...…22

*Young v. Warner–Jenkinson Co.*, 152 F.3d 1018, 1022 (8th Cir.1998)……………9

## **ARGUMENTS**

## **I.**

    **I.    Whether the District Court erred in granting summary judgment to Appellee TrialCard under Fed. R. Civ. P. 56(c) (App. 2508-2523 R. Doc. 78 at 1-16. App. 2524 R. Doc. 79 at 1) (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir.2016). *Agristor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir.1987). *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991)).**

3

### A. Boston has the burden of proof

As stated in Boston's Brief, the Court erred in finding that she had not met her burden. Trialcard argues that Boston bears the burden of proving that a protected trait was the motivating factor in the treatment she received from Trialcard. Boston agrees but also believes that she has met that burden by showing how she was treated. While the moving party bears the burden of establishing a lack of any genuine issues of material fact, *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010), the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue of material fact for trial." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Gibson v. Concrete Equip. Co.*, 960 F.3d 1057, 1062 (8th Cir. 2020) (holding that summary judgment should be granted only when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law).

Here, the Court did not challenge whether Boston was disabled. Judge Phillips acknowledges Boston was diagnosed with anxiety and depression by

4

Garner on December 18, 2019, at her first visit. App. 2508-2523 R. Doc. 78 at 1-16. However, just because the record indicates that Boston was diagnosed with depression and anxiety a week after her discipline does not mean that such condition did not exist prior to the diagnosis nor that such condition was not the determining factor in Trialcard's decision to discipline Boston after she disclosed her condition to Waddell. Trialcard even acknowledges that Waddell and Boston met on December 11, 2019 to discuss Boston's personal issues related to her bereavement leave.

Under 42 U.S.C. §1981 claims of discrimination and retaliation follow the same direct evidence or burden-shifting analysis employed in discrimination claims. *EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 972 (8th Cir.2014). In the absence of direct evidence of discrimination, the Court applies the burden-shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-805 (U.S.1973). Here Boston has offered an abundance of both direct and indirect evidence. Since direct evidence exists, the burden-shifting analysis should not apply. Id. However, even under the burden-shifting analysis, Boston has met her burden and the Court should not have granted summary judgment.

**B. Timing of Discipline and Termination**

5

The Court erred in finding that timing of discipline and termination not sufficient therefore failing to establish genuine issue of material fact to prove pretext for discrimination or retaliation. Boston was issued her first discipline for alleged attendance issues the day after she disclosed her disability to Waddell. However, the Court erroneously held Boston was issued discipline on or about December 5, 2019 and Boston did not disclose her disability until December 10, 2019. The signatures of both Boston and the supervisor issuing the writeup are dated December 11, 2019 the day after Boston disclosed her disability to Waddell. App. 1007 R. Doc. 67 at 7. App. 452 R. Doc. 65 at 11. At the very least, this is a genuine issue of material fact, and it goes to pretext. In *Logan*, the Court found "the threshold of proof necessary to establish a prima facie case is minimal." *Logan v. Liberty Healthcare Corp*., 416 F.3d 877, 880 (8th Cir.2005) citing *Young v. Warner–Jenkinson Co.,* 152 F.3d 1018, 1022 (8th Cir.1998).

"The timing of [an adverse action] in relation to ... protected activity can sometimes strong evidence to establish causation for purpose of establishing a prima facie case as well as pretext." See *Id.* citing *Sherman v. Runyon,* 235 F.3d 406, 410 (8th Cir.2000). Boston had never been disciplined prior to the December 11, 2019 write up and was eventually fired while on FMLA leave but never received any other discipline. Further, it should be up to a jury to determine what effect, if any at all Boston's disclosure of her disability on December 10, 2019 had

6

on her being written up the very next day. Boston had already disclosed her condition to Volland, who was Boston's manager and over operations of the Trialcard facility. Waddell only went to speak with Boston as the result of Volland's report to Waddell that "Boston was not acting like herself at work." App. 1006 R. Doc. 67 at 6. This proves TrialCard had some type of notice of Boston's mental health concerns prior to Waddell's meeting on December 10, 2019. *Id*. Further, the undisputed evidence shows Boston met with management in late November or around the first of December 2019 where she discussed some recent deaths in her family and needing to take PTO or bereavement leave. App. 452 R. Doc. 65 at 11.

Further, the undisputed evidence shows that although Boston was promoted prior to Quinn and had no disciplinary history prior to her December 11, 2019 write-up for attendance, Quinn got promoted to Boston's supervisor, January 2, 2020, despite Quinn's disciplinary history and lack of training. App. 1005 R. Doc. 67 at 5, 11. This occurred approximately three weeks after Boston was issued her discipline. Trialcard attempts to mislead the Court by saying that Boston and Quinn did not apply for the same position. However, the evidence does not show that anyone applied but that Quinn was selected. Further, there is no evidence to suggest Quinn suffered from a disability so this is evidence of disability

Appellate Case: 22-2298     Page: 7     Date Filed: 02/01/2023 Entry ID: 5241111

discrimination or at least creates a genuine issue of material fact on the issue and should be presented to a jury.

### C. Comparator Argument

The Court erred in finding that Hood, Rackley, and Sherman as well as the individuals they identified in their declarations were not similarly situated to Boston. Trialcard argues that the Court did not err in granting summary judgment in this matter because Boston failed to identify any comparators and the evidence suggests that Boston is not similarly situated to the Aerotek employees and was not treated differently as similarly situated employees. Boston provided three declarations of African American employees with personal knowledge of the facts they testified to by the names of Sherman, Rackley, and Hood. App 2520-21; R. Doc. 78 at 13-14. All testified that they witnessed and experienced what they viewed as a pattern of treating white employees disproportionately better than black employees as it related to the application of attendance points, working from home, and requiring medical documentation. Those individuals also provided examples of the treatment they allege and even identified those involved and others whom they witnessed be subjected to similar treatment.

Trialcard argues that Waddell nor any other manager was involved in any personnel decisions regarding any of the witnesses. However, the evidence, such

as emails from Waddell, her deposition testimony as well as the declarations from at least two of the witnesses prove that Waddell was involved in the termination of Sherman and Hood. Further, it is undisputed that Trialcard employees manage all of the operations at the facility including the Aerotek contractors. That was the testimony of all witnesses including Waddell, Quinn, and Volland who were all in management at Trialcard. Therefore, at best, this is not undisputed but a genuine issue of material fact warranting this matter to be adjudicated on the merits and not proper to be dismissed on summary judgment.

Here, Boston provided sworn declarations of several former employees who worked with Boston under the same members of management in the same job title, roles, and duties as she did. App. 2508-2523 R. Doc. 78 at 1-16. TrialCard's facility was initially staffed by Aerotek contractors while TrialCard employees served as supervisors and management. App. 2508-2523 R. Doc. 78 at 1-16. Supervisors and team leads can offer training and help to anyone under the unit regardless of their team of employment status. App. 2508-2523 R. Doc. 78 at 1-16.

The record, including Waddell's deposition testimony proves Waddell was involved in the termination of at least one African-American female employee of Aerotek who was threatening to get a lawyer and sue because she felt targeted after disclosing a medical condition that qualified as a disability and seeking an

9

accommodation. App. 2508-2523 R. Doc. 78 at 1-16. Waddell first testified she did not recall being involved in any way with the termination of Aumarice Sherman's ("Sherman") TrialCard contract. *Id.* In fact, Waddell testified Sherman left and then was rehired a second time in December 2021 but is no longer with the company. This evidence creates a genuine issue of material fact on the issue of whether the individuals named were similarly situated and the Court erred in finding that they were not or at least finding that their declarations were deficient in any way.

### D. Allegations of non-compliance with attendance policy

Boston alleges that the Court erred in finding that Boston had somehow violated Trialcard's attendance policy. App. 2519-2520; R. Doc. 78 at 11-13. Trialcard argues that Boston was required to contact Workforce Management App. 2379; R. Doc. 76 at 11. Trialcard further alleges that Boston knew she had to communicate with Cigna and Trialcard but simply refused to communicate with Waddell and therefore, Trialcard had a good faith basis to fire Boston because they lacked knowledge of her intentions regarding returning to work. App. 452, 456-58, 461-62; R. Doc. 65 at 11, 15-17, 20-21. However, it is undisputed that Boston was in constant communication with her supervisor, and it is also undisputed that Quinn is a representative of Trialcard. App. 1008, 464 R. Doc 67 at 8-9. Further it is undisputed that Waddell sent Boston a termination letter dated February 26,

10

2020 stating that Boston failed to return to Cigna the required medical certification and failed to communicate with Waddell or a Trialcard representative.  App. 446, 464-480; R. Doc. 65 at 5, 23-39; App. 1009; R. Doc. 67 at 9.

Waddell testified that Quinn was a Trialcard representative. App. 1008, 464 R. Doc 67 at 8-9.   It is undisputed that Waddell testified that when she sent the letter to Boston, she was unaware of Boston's communications with Quinn, a Trialcard representative. App. 465; R. Doc. 65 at 24.   However, because it is undisputed that because Boston had indeed been in contact with a Trialcard representative, she did not violate the attendance policy as alleged. Nonetheless, Trialcard now tries to change course and argue that Quinn does not count and that Boston could only communicate with Waddell, despite what Waddell's termination letter states and therefore the Court did not err. App. 2520; R. Doc 78 at 13; TC Brief at 45.

Trialcard next tries to argue that Boston had not raised the issue of agency law prior and therefore should not be considered by the Court. TC Brief at 45. However, agency is not a new theory but Missouri law on the issue of notice and evidence that the Court erred in its ruling that Boston's communication with Quinn were not sufficient although it is in line with Trialcard's attendance policy as Waddell stated in the termination letter.

Trialcard tries to argue that there is no caselaw to support that the agency theory applies to compliance of employees with company attendance policies and that if the Court accepts this, then it would make it impossible for companies to enforce attendance policies. *Id.* However, Trialcard and the Court erroneously relied heavily on Waddell's assertion that she did not know that Quinn was in contact with Boston when she made the decision to terminate Boston. Id.

Trialcard acknowledges in their brief that Boston communicated with both Quinn and Cigna while she was out on leave. TC Brief at 18-24. It is also undisputed that Waddell communicated with Quinn and Cigna about Boston while she was out on leave. Id. It is also undisputed that Cigna contacted Boston's healthcare provider on February 12, 2020 to inform him that they had yet to receive the medical paperwork for Boston's leave. Id. Trialcard stated that their attendance policy states that if a employee is absent for three consecutive days without notice, then Trialcard assumes the employee abandoned their job. TC Brief at 25. However Cigna and Quinn acknowledged that they had been in communication with Boston. The undisputed evidence shows that on February 24, 2020, Waddell even acknowledged to Cigna that she received some indication that Boston would be seeking an extension to her leave. Id at 23. Boston contacted Cigna on February 25 and Quinn on February 26. Id. at 23-24. Waddell

Appellate Case: 22-2298     Page: 12     Date Filed: 02/01/2023 Entry ID: 5241111

communicated with Cigna on February 25 and 26. Id.  Boston told Quinn that she would come back to work if they did not sort out her paperwork issue. Id at 27.

Agency law not only applies to Quinn, a Trialcard representative but also applies to Cigna since they are the third-party administrator for Trialcard and therefore also a Trialcard representative. TC Brief at 14-29. Trialcard hired to handle its FMLA and other leave request. Id. The Court erroneously found that there was no evidence Trialcard had any involvement or authority with leave decisions but acknowledges that Waddell contacted Cigna on at least two previous occasions to send medical documentation in her possession and to correct a erroneous leave determination Cigna had made regarding Boston's eligibility.

The undisputed evidence in this case shows that Waddell testified that she did not have authority over Boston because she was not her supervisor, but Quinn did because Quinn was her supervisor. App. 1006; R. Doc. 67 at 6.  Quinn testified that "she believed that Boston deserved to be fired because she was not there able to work because she was on short-term disability for mental issues." Id.  Quinn's statements about Boston's ability to work and whether she should be fired are direct evidence of discrimination.

However, with Quinn's acknowledgement about how she truly felt about Boston's ability to work, Trialcard then erroneously argues that Boston knew Quinn did not have decision-making authority regarding FMLA matters even if she

13

was on notice. TC Brief at 47-48, 57-58. In fact, Trialcard tries to argue that Quinn had no involvement in Boston's termination because of how blatant her behavior was towards Boston. Id. However, Trialcard also tries to convince the Court that Boston did not raise the issue of Quinn's animus and false statements regarding Boston and there is no evidence of Quinn's animus towards Boston. TC Brief at 47-48. However, Boston has submitted evidence regarding Quinn's motive and intent but the trial court erroneously did not find it compelling to defeat summary judgment. Although the undisputed evidence shows that Cigna contacted Boston's doctor in late March almost a month after she was fired regarding her leave paperwork, Trialcard argued that the decision to fire Boston was already made. App. 1010 R. Doc. 67 at 10. Trialcard cannot plead innocence in firing Boston but then when Cigna tries to resolve the issue, state that it is too late. Especially when the undisputed evidence suggest that Trialcard had high turnover and Boston was a good employee. This is evidence of pretext as well.

Trialcard also argues Boston was required to follow the attendance policy but the undisputed evidence shows that Boston complied with the attendance policy and any questions should have been left to a jury instead of dismissed via summary judgment. Id.

### E. Was Discipline, and termination pretext for discrimination

Appellate Case: 22-2298     Page: 14     Date Filed: 02/01/2023 Entry ID: 5241111

Trialcard erroneously argues that there is no evidence that Boston's termination was pretext for discrimination in any way. However, the Court is reminded that Boston was disciplined the day after she disclosed her disability to Waddell, and she was terminated while "out on leave for mental issues" as her boss, Quinn stated in her deposition. App. 1006; R. Doc. 67 at 6. Quinn also testified that she believed Boston should be fired because she was not at work. Id.

This Court has previously held that "the timing of [an adverse action] in relation to ... protected activity can sometimes strong evidence to establish causation for purpose of establishing a prima facie case as well as pretext." *Sherman v. Runyon,* 235 F.3d 406, 410 (8th Cir.2000).

Trialcard tries to argue that there was a lengthy gap between Boston's first FMLA approval was several month so there is no causal connection. TC Brief at 50. However, the timing of Boston's discipline along with her termination while out on leave creates a causal connection. *Smith v. Allen Health Sys., Inc.,* 302 F.3d 827, 833 (8th Cir.2002). Trialcard acknowledges that Boston first discussed FMLA and her condition on December 10, 2019 in an effort to create distance between Boston's termination. TC Brief at 51. However, she was disciplined the next day then passed over for a promotion three weeks later.

"One method of proving pretext is to show that the employer's proffered explanation has no basis in fact." *Id.* Evidence from person involved in the

15

decision-making process may reflect employer's retaliatory motive. *Kneibert v. Thomson Newspapers,* 129 F.3d 444, (8th Cir.1997). This is why Trialcard is so adamant about convincing the Court that Quinn had no involvement in Boston's termination. TC Brief at 47-48, 57-58. "[S]ubstantial changes over time in the employer's proffered reason for its employment decision [may] support a finding of pretext." *Kobrin v. University of Minnesota,* 34 F.3d 698, 703 (8th Cir.1994).

Here, the undisputed evidence shows that Trialcard stated that Boston was fired because she failed to submit the required medical documents and did not communicate with a Trialcard representative. However, after establishing that Quinn was a Trialcard representative and that Boston did communicate with her extensively, then Trialcard argued that Quinn had no authority and was not involved in the decision to fire Boston.

Trialcard also tries to argue that Waddell had never seen the Fitness for Duty form Cigna sent to Boston's doctor that was required before she could return to work. TC Brief at 46; App. 2433; R. Doc. 76 at 65 (PSOF 121 Resp). However, the undisputed evidence shows that Waddell previously testified that she knew Boston could not return to work without the fitness for duty release form from her doctor after she requested leave. App. 1001-1020 R. Doc. 67 at 1-20. On February 24, 2020, Boston told Quinn prior to being fired that she would return to work the following Monday if the leave issue was not resolved. App. 1001-1020 R. Doc. 67

16

at 1-20. Trialcard argues that Boston did not previously raise the issue of inconsistent statements, declarations, and testimony from Waddell, Quinn, and Trialcard, therefore the Court should not consider it. TC Brief at 49. However, Boston pointed out that Waddell testified she had no knowledge of Quinn's communications with Boston when she made the decision to fire her. Waddell then stated in a subsequent declaration that when she spoke with Quinn, Quinn mentioned in a text message Boston had indicated she intended to seek a leave extension. This is inconsistent with her previous testimony and the truth or credibility should be a matter for a jury to decide. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). The Court has held that the clear-and-convincing standard of proof should be taken into account in ruling on summary judgment motions does not denigrate the role of the jury. Id. It by no means authorizes trial on affidavits. Id. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. Id. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–159 (1986). Neither do we suggest that the trial courts should act other than with caution in granting summary judgment. See

Appellate Case: 22-2298    Page: 17    Date Filed: 02/01/2023 Entry ID: 5241111

*Anderson*, 477 U.S. at 255.  Waddell and Quinn's credibility are issues for the jury, not the judge.

The Court found because Quinn lied about her communications with Boston, Boston therefore did not satisfy the policy. *Id*. However, this holding along with Trialcard's attendance policy proves that Boston was compliant.  Despite the Court being baffled by Quinn's conduct, it erroneously found the record did not show Quinn intended to discriminate against Boston in any way and Quinn was not involved in the decision to fire Boston.  *Id*. However, Waddell testified Quinn was involved in the investigation involving Boston's leave extension just before Boston was fired.  Further, if the Court is baffled by Quinn's conduct, it is reasonable that a jury could find it discriminatory.

## F. Boston's FMLA Claims

Boston was approved for intermittent FMLA from January 4, 2020 through March 27, 2020. When Waddell fired Boston, she had just been informed by Cigna that although Boston's continuous leave had been denied because they did not have the medical form, Boston still had 432 hours of FMLA leave available.  App. 1009 R. Doc. 67 at 9.  The trial court erroneously held that Cigna and not Trialcard was responsible for  processing Boston's FMLA claims and there is no evidence that Trialcard interfered. App. 2508-2523 R. Doc. 78 at 1-16. The Court further stated that Waddell went out of her way to assist Boston.  Id. However, the records also

18

show that Boston was disciplined the day after she disclosed her disability to Waddell and asked for FMLA. There is no question that termination and discipline are adverse actions but the Court erroneously found Boston's discipline was issued on December 5, 2019 before Boston's disclosure of her medical condition opposed to after despite it being signed by all parties on December 11, 2019. This alone is a disputed material fact deeming summary judgment improper.

As for Boston's FMLA claims, Trialcard relies heavily on Brown, where Defendant sent Brown a ten (10) day letter after Brown's leave was denied informing her that she was currently on unapproved leave and that Brown needed to contact them within ten (10) days of the date of the letter to discuss her employment status. *Brown v. Dolgencorp, LLC*, 2020 U.S. Dist. Lexis 132968 (Case No. 4:18-cv-000719-jch). The letter went on to state that if Brown failed to contact them within the allotted time, she would be fired. Id. Here, Trialcard never sent Boston any letter nor provided her with any notice that she was believed to be in violation of any policies but simply terminated her as soon as they received word from their agent, Cigna that her leave request was denied.

Because Cigna and Quinn are agents of Trialcard, the company cannot plead ignorance and good faith when it acted. Especially when the undisputed record shows that the decisionmaker(s) were in constant contact with those who had authority and knowledge of Boston's condition and circumstances. This court is

reminded that it has recognized an employee can prove interference with an FMLA right regardless of the employer's intent. *Throneberry v. McGehee Desha County Hosp.*], 403 F.3d [972,] 979 [ (8th Cir.2005)]. An employee can prevail under an interference theory if he was denied substantive rights under the FMLA for a reason connected with his FMLA leave. *Id.* "[E]very discharge of an employee while [he] is taking FMLA leave interferes with an employee's FMLA rights." Id. Therefore, the record shows that the Court erred in its ruling there was no evidence interference because a genuine issue of material fact existed.

## <u>CONCLUSION</u>

WHEREFORE, for all the reasons stated herein, Appellant respectfully requests that this Court reverse and vacate the District Court's order granting summary judgment and remand the matter to the district court for a jury trial on the merits.

Appellate Case: 22-2298    Page: 20    Date Filed: 02/01/2023 Entry ID: 5241111

## CERTIFICATE OF SERVICE AND COMPLIANCE FOR
## BRIEF OF APPELLANT

I hereby certify that on January 31, 2023, the foregoing was filed electronically with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit to be served by operation of the court's electronic filing system upon the attorneys of record. I certify that all participants in the case are registered CM/DOC. users, and that service will be accomplished by the CM/DOC. system.

I further certify that this motion was prepared in 14-point typeface, Microsoft Word, converted to Portable Document Format and found to be virus free upon scanning, and this motion complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,667 total words.

Respectfully submitted,

**/s/Gerald Gray II**
Gerald Gray II, #67476
**G. GRAY LAW, LLC**
104 WEST 9TH STREET, SUITE 401
KANSAS CITY, MO 64105
(O) 816-888-3145
(F) 816-817-4683
ggraylaw@outlook.com
**ATTORNEY FOR PLAINTIFF-
APPELLANT**

21